**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| VALE PARK ANIMAL HOSPITAL, LLC,      ) | |
|      ) | |
| Plaintiff,      ) | |
|      ) | |
| v.      ) | No. 2:19 CV 70 |
|      ) | |
| PROJECT 64, LLC, *et al.*,      ) | |
|      ) | |
| Defendants.      ) | |

## OPINION and ORDER

This matter is before the court on the parties' cross motions for summary judgment. (DE ## 44, 57.) For the reasons that follow, plaintiff's motion will be denied, and defendants' motion will be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff Vale Park Animal Hospital, LLC, provides veterinarian services in Valparaiso, Indiana. (DE # 46 at 4.) In 2017, Vale Park began exploring the idea of expanding the building where the practice was located, or alternatively, building a brand new facility. (*Id.*) Dr. Mary Ann Sheller and Dr. Brent Lakia – currently the sole owners of Vale Park – met with defendants John Wiertel and Geoffrey Graham, the sole owners of defendant Project 64, LLC,[1] regarding remodeling the building. (*Id.* at 4-5.) Wiertel and Graham advised Sheller and Lakia that remodeling the current location

---

[1] Project 64 has filed a counterclaim against Vale Park. (DE # 24.) Neither party has moved for summary judgment with respect to that claim. Therefore, for ease of reference within this Opinion and Order, the court refers to Vale Park as "plaintiff" and Project 64 as "defendant."

was neither cost effective nor practical, and encouraged Sheller and Lakia to consider building a new hospital. (*Id.* at 4.) On May 20, 2017, after Sheller reviewed Project 64's website and discussed the project with Wiertel and Graham, Vale Park entered into a contract with Project 64 to design Vale Park's new veterinary facility. (DE # 58-2 at 10; DE # 54-6 at 13.) The scope of the project was subsequently enlarged and the parties signed a new contract on April 5, 2018, for, among other things, architectural design services. (DE # 46 at 5, 39-40, 70.)

The project summary in both contracts states that Project 64 would provide "design, consultation, management, and cost budgeting services" to best allocate the construction budget "into an efficient, revenue generating veterinary care facility." (DE # 54-11 at 1; DE # 54-12 at 1.) The project summary also states that Project 64's "services are all inclusive and include required travel, licensure, and reproductions." (*Id.*) The contract sets forth six phases as part of Project 64's "practice delivery services": (1) Project Programming; (2) Schematic Design; (3) Design Development; (4) Preliminary Pricing; (5) Construction Documents; and (6) Construction Administration and Construction Management. (DE # 46 at 67-68.)

In the second phase, the schematic design phase, the contract states, "the design team will begin to schematically explore the overall project design. . . . [Project 64] will begin to measure the affected spaces, draw base plans, and develop schematic design options to review with the Owner." (*Id.*)

The contract states that in the third phase, the design development phase, "the design team will begin working to add the required details to the design for constructability. It is during this phase that the structural and mechanical engineering

2

consultants will begin to incorporate their components and identify their individual design requirements. The ultimate goal of this phase is to create a working set of drawings that accurately depicts the client's needs while also accommodating required mechanical systems." (*Id.*)

In the fifth phase, the construction documents phase, "[t]he construction documents are developed in accordance with all local codes, zoning ordinances, and jurisdictional requirements. The architectural drawings are coordinated with the other drawings created by the engineering consultants and a complete set of plans is packaged based on permitting requirements." (*Id.* at 68.)

On July 27, 2017, Sheller signed off on the schematic designs provided by Project 64. (DE # 56-6 at 20; DE # 56-11 at 2.) These designs included language stating, "SIGNED APPROVAL DIRECTS THE DESIGN TEAM TO FORWARD THE DESIGN TO ENGINEERS, CONSULTANTS, AND THIRD PARTIES REQUIRED IN ORDER TO COMPLETE THE DESIGN PROJECT." (DE # 56-11 at 2.)

The construction budget was $3,200,000 and Project 64's design management fee was $317,000. (DE # 46 at 66, 69.) Between May 22, 2017, and December 20, 2018, Project 64 tendered nine invoices to Vale Park, totaling $256,399.99. (*Id.* at 77-85.) Each invoice listed the work description as "Architectural Design." (*Id.*)

Vale Park did not directly pay Project 64's invoices; rather, Sheller transferred funds to VPAH Lakes Property, LLC ("Lakes") and Lakes paid all but one of the invoices. (DE # 54-6 at 14-15.) Sheller paid a $22,000 invoice. (*Id.* at 15.) Like Vale Park, Lakes is jointly owned by Sheller and Lakia. (DE # 54-6 at 6.) Lakes owns the land and building where Vale Park operates its veterinary business. (*Id.*) Neither Lakes nor

Sheller is a party to the contract or this suit.

Project 64's website markets Project 64 as offering, among other things, "Architectural Design." (DE # 46 at 27, 34-36.) However, Project 64 is not a licensed architectural firm in Indiana. (*Id.* at 59-60.) Neither Wiertel nor Graham is licensed to practice architecture in Indiana. (DE # 54-2 at 6; DE # 54-1 at 3.) Rather, Project 64 obtains architectural services for its clients from third-party architectural firms. (DE # 46 at 35-36, 57.) According to Wiertel, Project 64 had not yet contracted with an outside architectural firm to work on the Vale Park project at the time Vale Park terminated the contract because the time had not come to provide that service. (*Id.* at 41.) Defendants claim that Project 64 would have delivered the architectural designs during the fifth phase, the construction documents phase, of the project. (DE # 54-1 at 3; DE # 54-2 at 4.)

The parties dispute when, and why, Vale Park terminated the contract, but agree that Vale Park terminated the contract in either November or December 2018.[2] (*See e.g.* DE # 46 at 5; DE # 54-6 at 18.) At the time the contract ended, Project 64 had produced one design and three renderings. (DE # 46 at 72-75.) The parties are in agreement that the contract was terminated prior to the completion of the final three phases of the contract. (DE ## 44 at 4-5, 46 at 42-44; DE # 53 at 5.)

Vale Park's complaint identifies three claims. In Count I, Vale Park alleges that Project 64 breached its contract with Vale Park by: failing to provide design services that fall within construction industry standards; contracting with Vale Park to provide architectural services that under Indiana law it cannot provide; and charging Vale Park

---

[2] This dispute is not material for purposes of the pending motions for summary judgment.

for architectural services that it did not provide. (DE # 1 at 4.) In Count II, Vale Park alleges that Wiertel and Graham violated the statutory duty that they owed Vale Park under Indiana law, by indicating that they were entitled to practice architecture without the actual authority to do so under Indiana law.[3] (*Id.* at 5.) In Count III, Vale Park alleges that Wiertel and Graham committed fraud by marketing Project 64's architectural design services to Vale Park, and contracting with Vale Park for architectural design services. (*Id.* at 6.)

Before the court are the parties' cross motions for summary judgment. Vale Park moves for summary judgment on Counts I and III only. (DE # 44.) Defendants move for summary judgment with respect to all of Vale Park's claims, but do not move for summary judgment on its counterclaim. (DE # 57.) The defendants have also submitted motions to strike evidence submitted in connection with the aforementioned motions for summary judgment. (DE ## 58, 70.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law. The party pursuing the motion must make an initial showing that the agreed-upon facts support a

---

[3] This court issued an Opinion and Order pertaining to Count II, which is discussed in a later section of this opinion.

judgment in its favor." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (internal citation omitted).

"[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "Where . . . the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Id.*; *see also Reserve Supply Corp. v. Owens-Corning Fiberglass Corp.*, 971 F.2d 37, 42 (7th Cir. 1992). "If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC*, 778 F.3d at 601.

In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable

fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011).

## III.   DISCUSSION

### A.   Standing and Real Party in Interest

In their motion for summary judgment, defendants argue that Vale Park lacks standing to sue because it has not suffered any damage as a result of defendants' actions. (DE # 55 at 10.) Defendants argue that Vale Park did not suffer any injury because Vale Park was not the party that made payments under the Agreement – rather, Sheller and Lakes (both non-parties to the agreement) paid Project 64. For the same reason, defendants also argue that Vale Park is not the real party in interest. (DE # 55 at 11-12.)[4]

In its response brief, Vale Park points to its expert's opinion that payments made on the contract obligations by Lakes should be treated as payments made by Vale Park because the two companies are commonly-owned. (DE # 63 at 17.) Vale Park's

---

[4] Because standing is a jurisdictional issue, not a merits issue, defendants should have raised its jurisdictional arguments as a motion under Federal Rule of Civil Procedure 12(b)(1), not Rule 56. *See Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 814 (7th Cir. 2018); *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987) ("Seeking summary judgment on a jurisdictional issue . . . is the equivalent of asking a court to hold that because it has no jurisdiction the plaintiff has lost on the merits. This is a nonsequitur." (internal citation omitted)). However, "because jurisdictional issues like standing . . . are not waivable" the court can "overlook the misnomer and address the substance of the motion. *Chicago Joe's Tea Room, LLC*, 894 F.3d at 814-815.

argument lacked any citation to legal authority that supported this position, or that addressed the arguments raised by defendants. This court ordered Vale Park to file a supplemental brief addressing the issues of standing and real party in interest. (DE # 76.) Both parties filed supplemental briefs. (DE ## 77, 78.)

With regard to standing, defendants argue that Vale Park did not suffer any injury in fact because it did not make the payments to Project 64. "Article III limits federal courts to resolving 'Cases' and 'Controversies.' To ensure that what is before them is in fact a case or controversy, federal courts require that plaintiffs have 'standing' to sue. That means a plaintiff must have suffered an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. May 14, 2021). "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete and particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 (2016), as revised (May 24, 2016) (cleaned up). In this case, it is the "particularized" prong that is at issue. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (cleaned up).

Defendants also argue that Vale Park is not the real party in interest. Under Federal Rule of Civil Procedure 17, "[a]n action must be prosecuted in the name of the real party in interest." "This is a procedural rule requiring that the complaint be brought in the name of the party to whom that claim belongs or the party who according to the governing substantive law, is entitled to enforce the right." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (cleaned up). "Some courts have described Rule 17's real-party-in-interest requirement as essentially a codification of

[the] nonconstitutional, prudential limitation on standing." *Id.* at 757. "One well-established prudential-standing limitation is the principle that a litigant cannot sue in federal court to enforce the rights of third parties." *Id.*

In this case, neither standing nor Rule 17 serves as a barrier to Vale Park's claims. Vale Park apparently delegated the performance of its duty under the contract (to pay Project 64 for its services) to third parties Sheller and Lakes. According to the Restatement (Second) of Contracts § 318 (1981), "[a]n obligor can properly delegate the performance of his duty to another unless the delegation is contrary to public policy or the terms of his promise." Moreover, "[u]nless otherwise agreed, a promise requires performance by a particular person *only* to the extent that the obligee has a substantial interest in having that person perform or control the acts promised." *Id.* (emphasis added); *see also Aschermann v. Aetna Life Ins. Co.*, 689 F.3d 726, 729 (7th Cir. 2012); *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 220 (7th Cir. 1996); *Paniaguas v. Endor, Inc.*, 847 N.E.2d 967, 973 (Ind. Ct. App. 2006). There was nothing in the parties' agreement that prohibited Vale Park from delegating its contractual payments to a third party; this delegation is not against public policy; and Project 64 did not have a substantial interest in having Vale Park personally making the contractual payments. Thus, while Vale Park did not personally cut the checks to Project 64, it nevertheless satisfies the injury-in-fact requirement and has standing. Similarly, Vale Park remains the real party in interest. Thus, the court will proceed to the merits of the motions for summary judgment.

B.    *Breach of Contract*

Both parties move for summary judgment on Vale Park's breach of contract claim. "To recover for a breach of contract, a plaintiff must prove that: (1) a contract

9

existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007). Here, neither party disputes the existence of a contract.

### 1.    Architectural Design Services

In its complaint, Vale Park alleges that Project 64 breached the contract by contracting to provide architectural services that it was not permitted to provide under Indiana law because it is not licensed. (DE # 1 at 4.) Project 64 moves for summary judgment on this claim, arguing that there was no contractual agreement wherein Project 64 promised to personally provide or perform architectural design services. (DE # 55 at 13.) Rather, it argues that it promised to provide a phased delivery service, one deliverable being architectural design provided by a licensed architect. (*Id.*)

The parties' dispute on this claim turns on interpretation of the contract. "The goal of contract interpretation is to determine the intent of the parties when they made the agreement." *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 72 (Ind. Ct. App. 2014). The court "must examine the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017). "Construction of the terms of a written contract generally is a pure question of law. If, however, a contract is ambiguous, the parties may introduce extrinsic evidence of its meaning, and the interpretation becomes a question of fact." *Id.* (internal citation omitted).

"Indiana follows 'the four corners rule' that extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the

instrument are susceptible of a clear and unambiguous construction." *Univ. of S. Indiana Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006) (cleaned up). "A document is not ambiguous merely because parties disagree about a term's meaning. Rather, language is ambiguous only if reasonable people could come to different conclusions as to its meaning." *Id.* (internal citation omitted).

In this case, neither party addresses the question of ambiguity. Yet, the terms of the contract are ambiguous. For instance, ambiguity exists regarding whether the base plans discussed in phase two had to be created by a licensed architect, or whether a licensed architect could merely review and sign off on the plans in phase five. Project 64 has not established as a matter of law that the terms of the contract permitted it to hire an outside architect to perform the architectural services required by the contract. Accordingly, Project 64 is not entitled to summary judgment on the question of whether it breached the contract by providing base plans not created by a licensed architect.

## 2.   Sufficiency of Performance

Vale Park moves for summary judgment on its claim that Project 64 breached the contract by failing to make any meaningful headway in designing and generating architectural plans for Vale Park's construction project, and did not complete any of the phases of construction design in a satisfactory manner. (DE # 45 at 9-10.) Project 64 responds that it produced the work product demanded at each stage of the contract prior to Vale Park's termination of the contract. (DE # 53 at 14.) Project 64 argues that Vale Park obstructed Project 64's full performance under the contract by postponing Project 64's requested meeting regarding the renderings/drawings. (*Id.* at 14-16.)

Vale Park is not entitled to summary judgment on this claim. Vale Park has failed

to identify evidence that would allow this court to determine, as a matter of law, that

the drawings produced by Project 64 fell short of what was required by the contract.

While Vale Park places great emphasis on the number of pages produced by Project 64,

it fails to establish that those pages fell short of the work product promised in the

contract. Vale Park points to the fact that none of the drawings or plans Project 64

provided prior to Vale Park's termination of the contract were created by a licensed

architect. (DE # 45 at 10.) However, as discussed in the prior section, there is a question

of fact as to whether the contract required the drawings tendered in the first three

phases to be created by a licensed architect. Because Vale Park has failed to establish

that the record is "so one-sided as to rule out the prospect of a finding in favor of the

non-movant on the claim" *Anderson*, 477 U.S. at 254, its motion for summary judgment

on its breach of contract claim must be denied.

Project 64 also moves for summary judgment on Vale Park's breach of contract

claim regarding the sufficiency of Project 64's work product. (DE # 55 at 14.) Project 64

argues that Vale Park cannot produce any evidence that Project 64's performance fell

below construction industry standards because doing so requires expert evidence,

which Vale Park has not obtained. (*Id.*) Vale Park responds that the standard Project 64

failed to meet was for an architect to create the drawings and designs in the first

instance. (DE # 63 at 18.) Because there are material questions of fact regarding whether

the drawings needed to be drafted by a licensed architect, Project 64's motion on this

claim must be denied.

### 3.     Charges for Architectural Design

Project 64 moves for summary judgment on Vale Park's claim that Project 64

breached the contract by charging for architectural services that it did not provide. (DE # 55 at 14.) Project 64 argues that it did not charge for architectural services, but merely provided architectural design as one of the deliverables that would be provided as part of the contractual relationship. (*Id.* at 15.) Once again, there exists a material question of fact as to whether the contract required that the designs be drafted by a licensed architect, or whether Project 64 could have satisfied its contractual obligations by having a licensed architect sign off on the existing drawings in phase five.

For the foregoing reasons, neither party has established that they are entitled to judgment as a matter of law on Vale Park's breach of contract claim. Accordingly, both parties' motions with regard to this claim will be denied.

C.      *Negligence Per Se*

In Count II of Vale Park's complaint, it alleges that Wiertel and Graham violated the statutory duty they owed to Vale Park, arising under Indiana Code § 25-4-1-26, by advertising for, and engaging in, architectural services without a certificate of registration under that statute. (DE # 1 at 5.) Defendants moved to dismiss Count II. (DE # 22.) This court granted defendants' motion in part and denied it in part. (DE # 39.) This court noted that it was unclear from the face of the complaint, and the parties' briefs, whether Vale Park intended to make a claim of negligence per se, or a private right of action, in Count II. (*Id.*) This court found that there was no private right of action arising under the statute. (*Id.*) Furthermore, to the extent that Count II alleged a claim of negligence per se, the parties had not addressed whether the complaint stated such a claim, and therefore the court would not dismiss Count II. Now, defendants move for summary judgment on any negligence per se claim plaintiff may have alleged.

13

"The essential elements for a negligence action are (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014) (cleaned up). In a negligence per se claim, a plaintiff asserts that the defendant's violation of a statute suffices to prove a breach of an existing common law duty of reasonable care. *Stachowski v. Estate of Radman*, 95 N.E.3d 542, 543 (Ind. Ct. App. 2018). A plaintiff in a negligence per se claim asks the court to adopt the standard of conduct set forth in the statute as the standard of conduct required under the preexisting duty, such that a violation of the statute establishes breach of the existing duty. *Id.* at 544; *see also Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 276 (Ind. 2003) ("Under negligence per se, the law accepts the legislative judgment that acts in violation of the statute constitute unreasonable conduct.").

"The negligence per se defendant already owes a duty to use reasonable care without reliance on the statute." *Stachowski*, 95 N.E.3d at 544 (cleaned up). "Whether a duty exists is generally a question of law for the court. In making this determination, a three-part balancing test developed by [the Supreme Court of Indiana] can be a useful tool." *Yost*, 3 N.E.3d at 515. In this test, the court considers: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Id.* (cleaned up).

Neither party has addressed the question of whether Project 64 owed Vale Park an existing common law duty. However, as the movant, Project 64 bore the burden of persuasion and failed to meet that burden.

Project 64 argues, alternatively, that it is entitled to summary judgment on any negligence per se claim Vale Park might have alleged because such a claim is barred by

14

the economic loss doctrine. "[U]nder [the economic loss doctrine], contract is the only available remedy where the loss is solely economic in nature, as where the only claim of loss relates to the product's failure to live up to expectations, and in the absence of damage to other property or person." *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 152 (Ind. 2005) (cleaned up).

Vale Park responds that it qualifies for three exceptions to the economic loss doctrine. First, it argues that an exception exists for design professionals, and cites *Indianapolis-Marion Cty. Pub. Libr. v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722 (Ind. 2010). (DE # 63 at 21.) In fact, *Indianapolis-Marion Cty. Pub. Libr.* says precisely the opposite of what Vale Park claims. *See id.* at 735 (economic loss doctrine applies to bar tort claims against design professionals where there is privity of contract).

Next, Vale Park argues that the "other property" exception applies because Vale Park does not only seek damages caused by the design materials provided by Project 64, but also for the money Vale Park paid to Project 64 under the contract. (DE # 63 at 21.) Yet, the money Vale Park paid to Project 64 under the terms of the contract is *precisely* the type of damages the economic loss doctrine requires be remedied under contract – not tort – law. *See e.g. Indianapolis-Marion Cty. Pub. Libr.*, 929 N.E.2d at 729. Vale Park seeks damages on the basis that Project 64 did not provide the services promised under the contract, and claims as damages the compensation Vale Park paid for those services. This is a purely commercial dispute, where Vale Park argues that it did not receive the benefit of its bargain. Therefore the "other property" exception does not apply.

Finally, Vale Park argues that its negligence per se claim qualifies for the

economic loss doctrine's exception for negligent misrepresentation. (DE # 63 at 21.) However, Vale Park's claim is for negligence per se – not negligent misrepresentation. Furthermore, Vale Park again cites *Indianapolis-Marion Cty. Pub. Libr.*, when that case holds precisely the opposite of what Vale Park claims. There, the Supreme Court of Indiana found that negligent misrepresentation may serve as an exception to the economic loss rule in cases where there was no privity of contract, but not in cases where there is privity (or a chain of contracts). *Indianapolis-Marion Cty. Pub. Libr.*, 929 N.E.2d at 741. Here, the parties were in privity of contract. Therefore, this exception to the economic loss doctrine does not apply.

The court finds that, to the extent that Vale Park had an otherwise viable negligence per se claim against defendants, such claim is barred by the economic loss doctrine because Vale Park seeks recovery for purely economic damages, and no exception to the rule applies. Therefore, defendants are entitled to summary judgment in their favor on Vale Park's negligence per se claim.

D. *Fraud*

1.   Graham and Wiertel May Be Personally Liable

Wiertel and Graham argue that they are entitled to summary judgment on Vale Park's fraud claim because Vale Park has failed to establish that the corporate veil should be pierced in order to hold these defendants personally liable for the actions of Project 64. (DE # 55 at 15.) Yet, the corporate veil does not need to be pierced in order to hold these defendants personally liable.

"Under Indiana state law, an officer or shareholder of a corporation can be held individually liable, without the need to pierce the corporate veil, if he personally

participates in the fraud." *DFS Secured Healthcare Receivables Tr. v. Caregivers Great Lakes, Inc.*, 384 F.3d 338, 346–47 (7th Cir. 2004), *certified question accepted sub nom. DFS Secured Health Care Receivables Tr. v. Caregivers Great Lakes, Inc.*, No. 94S00-0410-CQ-447, 2004 WL 2307967 (Ind. Oct. 14, 2004). "It is true that an officer of a corporation is generally not personally liable for the torts of the corporation or other officers or agents merely because of her office. However, an officer is personally liable for the torts in which she has participated or which she has authorized or directed." *State, C.R. Comm'n v. Cty. Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind. 2000) (internal citations omitted); *see also Gable v. Curtis*, 673 N.E.2d 805, 809 (Ind. Ct. App. 1996) ("It is well-settled that a corporate officer cannot escape liability for fraud by claiming that he acted on behalf of the corporation when that corporate officer personally participated in the fraud."); *Am. Indep. Mgmt. Sys., Inc. v. McDaniel*, 443 N.E.2d 98, 103 (Ind. Ct. App. 1982) (affirming personal liability of corporation president for fraudulent statements he made regarding corporation's program and for statements made in corporation's brochure).

The same rule applies to limited liability companies. *See* Ind. Code § 23-18-3-3 ("A member. . . of a limited liability company is not personally liable for the debts, obligations, or liabilities of the limited liability company, whether arising in contract, tort, or otherwise . . .. A member, a manager, an agent, or an employee of a limited liability company may be personally liable for the person's own acts or omissions."); *KSM, LLC v. Lighthouse Storage, LLC*, 965 N.E.2d 173 (Ind. Ct. App. 2012) (Table).

Vale Park's claims against Graham and Wiertel are not based on their positions as members of Project 64. Rather, Vale Park has presented evidence of Graham and Wiertel's personal involvement in the alleged fraud. Taking the evidence in the light

17

most favorable to Vale Park, the non-movant on this claim, Graham and Wiertel created the website advertising "Architectural Design" as a service, and submitted a series of invoices citing "Architectural Design" as the work performed, even though no architect had completed any work on the project. Because Graham and Wiertel may be personally liable for any torts in which they participated, there is no need to pierce the corporate veil, and the court may consider the merits of Vale Park's claims against these defendants.

### 2.   Questions of Fact Preclude Summary Judgment

Both parties move for summary judgment on Vale Park's fraud claim against Wiertel and Graham. "To prove fraud, a plaintiff must show: (i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." *Reed v. Reid*, 980 N.E.2d 277, 292 (Ind. 2012) (cleaned up).

In its motion for summary judgment, Vale Park argues that the material misrepresentation Wiertel and Graham made was to claim to have performed "Architectural Design" services on all of the invoices, coupled with a demand for payment, even though Project 64 did not provide any architectural design services for Vale Park's construction project. (DE # 45 at 11.) Vale Park argues that construction in Indiana must be designed by an Indiana architect, and Project 64 was not licensed to

18

practice architecture in Indiana.[5] Vale Park argues that its reliance on these statements was reasonable in light of Project 64's website's advertisement of architectural design and the contract's reference to architectural design. (*Id.* at 12.)

For their part, Wiertel and Graham argue that they are entitled to summary judgment because Vale Park cannot prove justifiable reliance because Sheller and Lakia knew that Wiertel was not an architect and Graham never represented himself as an architect. (DE # 55 at 18.) Defendants point to Graham's "Assoc. AIA" designation in his email signature, claiming that it is "common knowledge" that an "Associate AIA" is an associate member of the American Institute of Architects who has been trained as an architect, but does not hold a license. (*Id.* at 6.) Defendants argue that, under the contract, Project 64 was to provide "Project Delivery Services" and architectural design was part of the deliverables that Project 64 would have delivered, through a subcontract with a licensed Indiana architect. (*Id.* at 20.)

In this case, both parties have failed to demonstrate the absence of any genuine issues of material fact. For example, it remains genuinely disputed whether the invoice's statement that Project 64 completed work on "Architectural Design" was a material misrepresentation and whether that statement was false. A reasonable jury could determine that Wiertel and Graham did not represent that Project 64 had a licensed architect that would draft the initial plans, but rather that Project 64 would

---

[5] Wiertel and Graham argue that Vale Park continues to try to use Indiana Code § 25-4-1-26 to create a private right of action for fraud – something this court has already determined does not exist. (DE # 55 at 18.) While Vale Park cannot proceed with a private right of action claim based on § 25-4-1-26, (*see* DE # 39), Vale Park nevertheless may proceed on a claim that Wiertel and Graham fraudulently misrepresented the work Project 64 would, and had, performed.

ultimately provide plans that had been approved by a licensed architect, as a deliverable in the overall project delivery service. Conversely, a reasonable jury could find that Graham and Wiertel did materially misrepresent the work they completed when they sought payment for "Architectural Design" when no architect had yet conducted any work.

It is also genuinely disputed whether Sheller and Lakia actually relied on the representation of "Architectural Design" in the invoices to mean that Project 64 had an architect on staff that had created the drawings it provided to Vale Park in phase two of the contract. Furthermore, there is a material question of fact as to whether such reliance was reasonable, in light of evidence that the contract was for the delivery of services, not personal performance of those services. Because these facts, and others, remain disputed, neither party is entitled to summary judgment on Vale Park's fraud claim.

E.    *Damages*

Defendants argue that they are entitled to summary judgment because Vale Park cannot establish damages for any of its claims. (DE # 55 at 23-24.) Defendants first reiterate their argument that Vale Park suffered no damages because Sheller and Lakes made the contractual payments. (*Id.* at 24.) As discussed in an earlier section, this argument is a non-starter – Vale Park merely appears to have delegated its duty under the contract to Sheller and Lakes. Vale Park's delegation of its duty does not mean that Vale Park suffered no damages.

Next, defendants argue that Vale Park suffered no damages because the money paid to Vale Park was used as an equity injection for the down payment on the

construction project. (*Id.*) Defendants argue that because Sheller was able to point to the approximately $264,000 that Vale Park paid Project 64 as part of the equity used to secure a loan for the construction project, Sheller has reaped a benefit and therefore this money cannot be claimed as damages. Defendants cite no case law to support this theory. Furthermore, the question is not whether Sheller somehow benefitted from the contract, but whether Project 64 was damaged. The money Vale Park paid Project 64 under the terms of the contract plainly constitutes damages. Defendants have not met their burden of persuasion as to this argument. Accordingly, this portion of their motion for summary judgment will be denied.

       F.     *Motions to Strike*

Project 64 has filed two motions to strike evidence designated by Vale Park. First, Project 64 moved to strike the affidavit of Mary Ann Sheller, on the basis that it contradicts her deposition testimony. (DE # 58.) Project 64 also moved to strike the affidavit of Gary Glassman, which Vale Park submitted as rebuttal expert evidence. (DE ## 70, 64.) The court did not rely upon any of the evidence challenged in Project 64's motions to strike in resolving the pending motions for summary judgment. Therefore, the motions to strike will be denied as moot.

## IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** plaintiff's motion for summary judgment. (DE # 44.) The court **GRANTS in part** and **DENIES in part** defendants' cross motion for summary judgment, on the terms identified in this Opinion and Order. (DE # 57.) The court **DENIES as moot** defendants' motions to strike. (DE ## 58, 70.) This case is **REFERRED** to Magistrate Judge Joshua P. Kolar for settlement proceedings;

should those proceedings be fruitless, a trial date and pretrial filing deadlines will be set

under separate order.

**SO ORDERED.**

Date: December 22, 2021

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT